BREDENBERG v. LANDRUM.

1. Where an instrument, in form a mortgage, omits the word "heirs," the *habendum* being to the mortgagee, his executors, administrators, and assigns forever, with power to the mortgagee, on default, to enter, take possession, and sell, it is a legal mortgage entitled to registry, and a lien and pledge of all the mortgagor's interest in the land described.   A mortgage not being an alienation or sale on condition, the word "heirs" is not essential to its validity, nor necessary to constitute it a lien on the fee simple estate.

2. Findings of fact by the Circuit Judge from written testimony, negativing fraud, approved.

3. Where a mortgagee refuses to accept a deed of conveyance of the mort-

gaged premises, executed to him by the mortgagor, and retains the mortgage, there is no merger or extinguishment of the mortgage.

4. Where a party, at the instance of the mortgagor, advances less than the mortgage debt in the purchase of the mortgage, judgment creditors of the mortgagor cannot object to the recovery of the full original debt by the assignee.

5. Costs in equity are within the discretion of the Circuit Judge.

Before WALLACE, J., Aiken, March, 1889.

This appeal was from the following decree:

In the year 1873, Thomas H. Meyer made notes to Mrs. M. L. Nail, Mrs. E. M. Hull, Mrs. F. C. McWhorter, and to C. C. Meyer, the sum of which, when aggregated, amounted to nearly four thousand dollars; separate notes given to each for the sum due to each. To secure each and all of these creditors T. H. Meyer executed a mortgage on the same day to C. C. Meyer on a tract of land in Aiken County, and for an amount equal to the sum of all the debts secured. This mortgage was duly recorded. In 1880 and 1881, and afterwards, sundry judgments were obtained against T. H. Meyer. The mortgage to C. C. Meyer contained a provision which authorized C. C. Meyer to sell the mortgaged premises on default in payment of the indebtedness secured by it, at maturity. There was no provision in the mortgage that authorized C. C. Meyer to buy in the event of the sale. The notes were not paid at maturity, and in 1882 C. C. Meyer, after due advertisement, under the power in the mortgage, offered the land for sale; his own bid being the highest and last, the property was knocked down to him. He undertook to execute a deed to himself in pursuance of his purchase, but executed it in his own name as "mortgagee," signing it as "C. C. Meyer, mortgagee."

He failed to pay any part of the purchase money at that time. Subsequently he attempted to borrow money to pay off the debt secured by the mortgage, and George R. Landrum agreed to lend him three thousand dollars upon satisfactory security. That the papers might be properly drawn, the parties consulted G. W. Croft, Esq., a member of the Aiken Bar, and a lawyer of great learning and experience. Upon an examination of the papers

submitted to him, he advised the execution of a proper deed to himself by C. C. Meyer, which was done, and then C. C. Meyer executed a deed of the same land to Landrum, absolute on its face, but in fact as security for the loan. Upon this latter instrument the other parties, whose debts were secured by the mortgage, signed a release of all interest in the land. Landrum then furnished the money with which the debts secured by the mortgage were paid. The original mortgage of T. H. to C. C. Meyer was also turned over to Landrum. This mortgage, although drawn in the form of a common law mortgage, did not contain the word *heirs* in the *habendum* clause. For the purpose of curing this possible defect, and making Landrum, as was supposed, perfectly secured, a deed was drawn and signed by T. H. Meyer, conveying the same land to Landrum. This deed Landrum refused to accept. Indeed, his friend, to whom it was delivered for delivery to Landrum, did not offer it to him. It was executed, so far as appeared, without the knowledge of Landrum.

The plaintiffs, who are the judgment creditors of T. H. Meyer, bring this action, and ask that the sale of the mortgaged premises (by and to himself) C. C. Meyer, and the deed made in pursuance of such sale, be set aside for fraud, and that the mortgage of T. H. Meyer to C. C. Meyer be marked satisfied, and if not marked satisfied, that it be held to convey only an estate for the life of C. C. Meyer.

As matter of law and fact, I find that there has been no fraud in any of these transactions. T. H. Meyer owed an honest debt for valuable consideration; he did not pay it, and the appointed agent undertook to sell the property mortgaged to secure it. The property was, as far as appears, duly advertised. Most of the present plaintiffs had already recovered judgments which were liens upon it, and who might have taken care of themselves at the sale. It was knocked down to the mortgagee, C. C. Meyer, at a most inadequate price, who, not being able to pay for it, was bidding, I am inclined to think, merely to make the property bring enough to pay the debts it was mortgaged to secure. If the land was worth more than the secured debts, junior incumbrances might have taken care of themselves. C. C. Meyer, however, not being able to pay his bid, he borrowed money from

Landrum, with the understanding that the land was to be pledged as security for repayment, and to this understanding T. H. Meyer was a party. The purchase of C. C. Meyer cannot be set aside for fraud.

But a trustee to sell cannot buy at his own sale, so as to bind those interested in the sale, without their consent, unless authorized by the instrument creating the power to buy. There was no authority to buy given to C. C. Meyer in the mortgage. The deeds executed by C. C. Meyer to himself were never recorded; the deed first recorded of the series was the deed of C. C. Meyer to George R. Landrum, and soon after the recording of that deed, this action was commenced, and objection to the purchase by C. C. Meyer made by creditors of T. H. Meyer. The sale to C. C. Meyer and the deeds made in pursuance of such sale are hereby set aside and vacated. *Ex parte Wiggins*, 1 Hill Ch., 353.

It follows that the deed made to Landrum by C. C. Meyer conveyed no title, and in itself created no pledge, but that instrument being intended as a mortgage, and to convey whatever interest C. C. Meyer had in the land, and the transaction being ratified by the other persons whose debts were secured by the first mortgage, and the first mortgage being delivered to Landrum, all taken together, operated to assign the first mortgage of T. H. Meyer to C. C. Meyer to Geo. R. Landrum, and he is entitled to foreclose the same, and it is so adjudged.

The ground that the omission of the word heirs from the *habendum* clause of the mortgage had the effect to limit the amount of the estate conveyed to the life-time of C. C. Meyer, is not well taken. It has been repeatedly held that a mortgage of real property operates now, under the act of 1791, only to create a lien, and is no longer a conveyance or alienation; the mortgagee takes no estate in the mortgaged property, and the word "heirs" is only material in fixing the measure of the estate taken by the grantee, and is of no significance in an instrument creating a pledge when title remains in mortgagor. *Thayer* v. *Cramer*, 1 McCord Ch., 395; *Reeder* v. *Dargan*, 15 S. C., 183; *Warren* v. *Raymond*, 17 *Id.*, 178; *Smith* v. *Grant*, 15 *Id.*, 150; *Aultman, Taylor & Co.* v. *Rush*, 26 *Id.*, 323. Several other cases might be cited to the same effect.

It is therefore ordered, adjudged, and decreed, that the complaint be dismissed, and that George R. Landrum is entitled to a foreclosure of the mortgage of T. H. Meyer to C. C. Meyer, and that Landrum have leave to apply at the foot of this decree for all proper orders to carry it into effect.

Plaintiffs appealed on the following grounds:

1. His honor erred in deciding that the word "heirs" is not necessary in the *habendum* clause of the mortgage of T. H. Meyer to C. C. Meyer *et al.*, to give a lien upon the fee simple estate of T. H. Meyer.

2. That his honor erred in deciding that the word "heirs" is not necessary in such mortgage to convey a fee simple estate by way of security to the mortgagee.

3. His honor erred in not finding that the sale under the power by C. C. Meyer to himself was fraudulent.

4. His honor erred in not finding that C. C. Meyer, having no power to convey to himself the land covered by his mortgage, could not agree to convey the land to Landrum for one thousand dollars more than he purchased it for, without committing fraud, and having so agreed in writing, as part and parcel of the same transaction by which he conveyed to himself for two thousand dollars, he thereby committed a fraud upon these plaintiffs as judgment creditors.

5. That George R. Landrum, being aware of these facts, was a *particeps doli*, and he having agreed with Thomas H. Meyer *et al.*, by defeasance in writing to convey him the land whenever T. H. Meyer should repay him the three thousand dollars advanced to pay off the purchase money mortgage as part of this transaction, violated the law and thereby committed a legal fraud upon these plaintiffs, and his honor erred in not so deciding.

6. That George R. Landrum having so agreed in writing with T. H. Meyer, he cannot claim to set up the mortgage to C. C. Meyer for any greater sum than the three thousand dollars and interest, and his honor erred in not so deciding.

7. That his honor erred in not deciding that the release of the equity to redeem by Thomas H. Meyer to George R. Landrum

was delivered, and thereby the judgment liens became the first encumbrance upon the property.

8. That his honor erred in not deciding that C. C. Meyer, under the purchase money mortgage, held a lien upon only an estate for the life of himself and possibly his co-creditors.

9. That his honor erred in deciding that C. C. Meyer's first deed to himself was not recorded until after C. C. Meyer made his deed to Landrum. He should have found that C. C. Meyer made a deed as mortgagee to himself and recorded it, but afterwards these other deeds were all made as part and parcel of a common transaction to hinder, delay, and defeat these judgment creditors, but were withheld from record until these judgment creditors commenced proceedings to enforce their executions, when they were recorded, all except the defeasance from Landrum to Thomas H. Meyer, and the deed from Thomas H. Meyer to Landrum giving up his defeasance.

10. That his honor erred in not deciding that there is no conflict of testimony as to Landrum executing an agreement by way of defeasance to Thomas H. Meyer at the time he advanced the three thousand dollars, and the benefit of this property enures to the benefit of these judgment creditors, inasmuch as such defeasance stipulates that upon the payment of three thousand dollars to Landrum by Thomas H. Meyer, he will reconvey the land conveyed to him by C. C. Meyer to Thomas H. Meyer.

11. That his honor erred in deciding that the complaint be dismissed without allowing us the costs of action, having set aside the deeds complained of as frauds upon us.

12. That his honor erred in not deciding that the master erred in admitting any parol testimony going to show that it was the intent of Thomas H. Meyer to convey by way of mortgage to C. C. Meyer *et al.*, mortgagees, than is expressed in the mortgage itself, and that he should have held as matter of law that no parol testimony is admissible to give a greater extent to the meaning of a written instrument where it operates to convey a greater estate than is expressed upon the face of the mortgage.

13. That his honor erred in overruling the exceptions to the admissibility of all parol testimony going to show that George R. Landrum executed a defeasance to C. C. Meyer or T. H. Meyer

at the time when he loaned the three thousand dollars to Thomas H. Meyer to pay off the purchase money mortgage.

14. That his honor erred in finding as a matter of fact that Landrum loaned the three thousand dollars to C. C. Meyer at all. He should have found upon Landrum's testimony that the loan was made to Thos. H. Meyer to pay off his indebtedness to the purchase money mortgagees and executed his defeasance, not to C. C. Meyer, but to Thos. H. Meyer.

15. That his honor should not have dismissed the complaint, but should have held that the plaintiffs were properly in court and were entitled to remain in court until the proceeds of the property were finally disposed of, and should have allowed them proper costs.

*Mr. P. A. Emanuel,* for appellants.

*Messrs. Henderson Bros., Croft & Chafee,* and *Jas. F. Izlar,* contra.

March 4, 1890. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was a proceeding, on the part of junior judgment creditors of a mortgagor, to set aside a sale of the mortgaged premises made by the mortgagee, C. C. Meyer, for himself and other creditors, at which sale he bid off the land, and, as mortgagee, conveyed it to himself; and to have declared void a subsequent deed executed by him, as such purchaser, to the defendant, George R. Landrum, who advanced $3,000 to the mortgagees on the security of the land, and had the original mortgage delivered to him. The facts are somewhat complicated, and are so fully and clearly stated in the Circuit decree, that we will not attempt to restate them. (The Circuit decree and the grounds of appeal should appear in the report.) The judge held that there was no actual, intentional fraud in any of the numerous transactions, but that the power in the original mortgage, while it gave to the mortgagee the right to sell the mortgaged premises, did not give him the power to purchase at his own sale, so as to bind the parties interested, without their consent; and so holding, he set aside the purchase of C. C. Meyer at his own

sale, and also the deeds executed to himself as purchaser, as well as the deed executed by him to George R. Landrum; "that the aforesaid deed made to Landrum by C. C. Meyer conveyed no title, and in itself created no pledge; but that instrument, being intended as a mortgage, and to convey whatever interest C. C. Meyer had in the land, and the transaction being ratified by the other persons, whose debts were secured by the first mortgage, being delivered to Landrum, all taken together, operated to assign the first mortgage of Thomas H. Meyer to C. C. Meyer to George R. Landrum, who is entitled to foreclose the same." He also held that the ground taken that the omission of the word "heirs" from the *habendum* clause of the mortgage, had the effect to limit the amount of the estate conveyed to the life of the mortgagee. C. C. Meyer, was not well taken; and giving Landrum the right to have the original mortgage in his hands foreclosed, he dismissed the complaint as to the plaintiffs.

From this decree the plaintiffs appeal, assigning 15 grounds of error, which are long, and being all printed in the Brief, need not be restated here.

Exceptions 1, 2, 8, 12, and 13 make the question, "that it was error to decide that the word 'heirs' is not necessary in the *habendum* clause of the mortgage of T. H. Meyer to C. C. Meyer, for himself and others, to give a lien upon the fee simple estate of T. H. Meyer." T. C. Meyer purchased the interest of his brother, C. C. Meyer, and their sisters in a certain tract of land for near $4,000, and, to secure the purchase money, mortgaged the said tract of land to his brother, C. C. Meyer, for himself and sisters. This mortgage, it seems, did not have in it the word "heirs"; and the proposition now is, that it was so defective that it could not be legally recorded; or, at most, that it conveyed only an interest for the life of the mortgagee. It is manifest that the instrument was inartificially drawn by some one not a lawyer; but, as it seems to us, there was no rational purpose for limiting the security to a life estate, and the context shows that such was not the intention. The words are, that "I, Thomas H. Meyer, for the better securing," &c., "bargained and sold, and by these presents I do bargain and sell, and, in plain and open market, give possession, unto the said C. C. Meyer, one tract or parcel of land [de-

scribing it], to have and to hold the said tract of land, unto the said C. C. Meyer, for himself and others above mentioned, their executors, administrators, and assigns, forever," &c.—thus giving, in case of default, power to enter, take possession. and sell the same. There can be little doubt as to what was the real intention of the parties. ' Originally. that is, under the feudal system, the *habendum* defined the quantity of interest or the estate which the grantee is to take; but since the practical abolition of the various feudal tenures, the only object of the clause is to state the character of the grantee's estate," &c. See 5 Am. & Eng. Éncyclop. Law, 456.

But, passing this, is it indispensable that a mortgage, in order to operate as a security for a debt, shall convey the legal estate to the mortgagee, and for that purpose must contain the word "heirs"? It is true, that, according to the common law, the word "heirs" is necessary to convey the fee in a deed of land. Formerly. a mortgage of land was but a sale on condition, and that explains the form which was then given to it—a conveyance coupled with a defeasance. But since the act of 1791, it is a misnomer to call a mortgage a "sale on condition." It is a mere lien on the property, as a security for the debt. This is shown by the authorities cited in the Circuit decree. The old form of mortgage may be still generally used; but, since the great change in its character, is that the only form in which a legal mortgage may be made?

The form of a simple deed of land is prescribed by statute; but we are not aware that any particular form is prescribed for a mortgage, and it is well settled that no particular form is necessary to constitute a mortgage. Why should not an instrument, drawn in precise conformity to the provisions of the act of 1791, and properly executed. be effectual as a mortgage to give a lien on the land? The case cited of *Harper* v. *Barsh*, 10 Rich. Eq., 149, had especial reference to the number of witnesses required in the execution of a mortgage as bearing upon the question of legal registry. It was there held that "a mortgage with only one subscribing witness, is void as a legal mortgage, and is not such a legal instrument, the recording of which will raise the presumption of notice to a purchaser from the mortgagor." Here, there

is no question as to the formalities of execution. but simply as to the construction and effect of its terms, and we can hardly suppose that could have any effect in excluding registry. Since a mortgage of land does not really convey the legal title, but gives only a lien on it to secure a debt, we cannot clearly see why it may not, for that purpose, be legal and binding without the use of the word "heirs."

In reference to mortgages and the different character given to them, Mr. Pomeroy divides the States into classes—one in which the common law doctrine prevails, and the other which has adopted what he calls "the equitable theory." He very correctly places our State in the latter class. Where "the mortgage is regarded, primarily, as a security, the debt is the principal fact, and the mortgage is collateral thereto. The interest which it confers on the mortgagee is a lien on the land, and not an estate in the land. It is a thing in action, and may, therefore, be assigned and transferred without a conveyance of the land itself. It is personal assets, and on the death of the mortgagee it passes to his executors or administrators, and not to his heirs," &c. See 3 Pom. Eq. Jur., § 1181, and notes. Mr. Jones also says: "It will be noticed that the English doctrine of the nature of mortgages, with slight modifications, prevails east of the Mississippi River everywhere, excepting New York alone in the North, Indiana, Michigan, and Wisconsin in the West, and South Carolina, Georgia, and Florida in the South; while west of the Mississippi, excepting only the States of Missouri and Arkansas, the doctrine everywhere prevails, that a mortgage passes no estate or right of possession," &c. See 1 Jones Mortg., § 69. As expressed by the Circuit Judge, "the word 'heirs' is only material in fixing the measure of the estate taken by the grantee, and is of no significance in an instrument creating a pledge, where title remains in the mortgagor."

Exceptions 3, 4, 5, and 9, in different forms, charge error in the Circuit Judge in finding that there was no actual fraud in the transactions growing out of the mortgage from T. H. to C. C. Meyer. That was a question of fact. We have carefully considered the testimony and all the circumstances, and we are unable to say that the finding is without evidence to sustain it. Un-

doubtedly, there were several mistakes, but we do not think there was any intention to defraud the creditors. The efforts seemed rather to have been intended to save themselves than to injure others.

Exceptions 8 and 10 complain of error on the part of the judge in not deciding that the release of the "equity of redemption" by T. H. Meyer to George R. Landrum was delivered, and "thereby the judgment liens became the first encumbrances upon the property," &c. That is to say, the proposition is, that the deed of the land, September 25, 1885, made by T. H. Meyer, in his effort to save George R. Landrum for the advance obtained from him, made a case for the application of the doctrine of merger, and instantly extinguished the mortgage, leaving the land subject to the lien of the subsequent judgment creditors. As it seems to us, the conclusive answer to this is that Landrum refused to accept that deed, which, as the judge found, "as far as appeared, was executed without his knowledge." He certainly still retained possession of the mortgage. We think the facts in this case distinguish it essentially from that of *Bleckeley* v. *Branyan,* 26 S. C., 424.

The sixth exception complains, "that George R. Landrum having so agreed in writing with T. H. Meyer, he cannot claim to set up the mortgage to C. C. Meyer for any greater sum than the $3,000 and the interest thereon, and that his honor erred in not so deciding." If the mortgaged premises should sell for more than the $3,000 advanced, and the interest thereon, a question might arise between George R. Landrum and the other contracting parties, whether he purchased the mortgage absolutely for the $3,000, or should account to the mortgagor to the full amount of this debt, after refunding his advance and interest. But we do not see that the judgment creditors of the mortgagor can object to the recovery of the whole mortgage debt, if the lands sell for enough to pay it.

This being an equity suit, the matter of costs was within the discretion of the Circuit Judge.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.